### HARBOR LAND CO v FAIRPORT (village) et

Ohio Appeals, 7th Dist, Lake Co

Decided Aug 17, 1936

Alvord, Blakeley & Ostrander, Painesville, for plaintiff.

Tuttle & Hubbard, Painesville, and Arthur J. Ritari, Fairport, for defendants.

## OPINION

By CARTER, J.

This cause comes into this court on appeal from the Common Pleas Court of Lake County, Ohio, wherein a finding was made by the trial court in favor of plaintiff.

The plaintiff claims to be the owner in fee simple of the lands described in the petition and that the village of Fairport through its officers unlawfully and wrongfully entered upon the premises, cut down shade trees, plowed and excavated portions thereof and seeks a permanent injunction enjoining the defendant from coming upon the premises and committing such further acts.

The defendants admitted the entry upon the premises and the committing of the acts set out in the petition but deny the ownership of the plaintiff in and to these premises and claims that the land described in the petition includes a part of the land which was on the 8th day of June, 1812, dedicated to and for public use as a highway and known as Prospect Street in the original town plat of Grandon, now Fairport, and that since .that time it has been and is now a public street therein, and prays that plaintiff be enjoined from maintaining and operating certain machinery and equipment for the removal of sand on these premises, and that the plaintiff be permanently enjoined from obstructing the village or the public in the free use of the street.

To this cross petition the plaintiff admitted the erection and maintenance of machinery for the removal of sand and then denies that the land described in the cross petition was dedicated for public use and further alleges adverse possession by plaintiff and its predecessors in title. That certain buildings had been erected thereon by plaintiff's predecessor in title.

It appears that the conveyance to the plaintiff of the lands in question between Plum and Vine Streets to the waters of Lake Erie on the north was by quit claim deed from Wilhelmina Monti, William J. Stange, Alex Monti and Bertha Stange, in the year 1922 and by deed of M. G. Mighton dated June 23, 1919, which latter deed includes that portion of the premises upon which he and his predecessors had paid taxes since 1889, it being that portion of the land lying north of the 82½ foot street designated as Prospect Street.

. There is no evidence of any conveyance by deed to these grantors, they claiming title by reason of no proper dedication and by adverse possession. The village claims title to Prospect Street by reason of it having been dedicated as a public street by the proprietors of the town of Grandon in the year 1812, as shown on plaintiff's Exhibit No. 5.

Wilhelmina Stange, by marriage Monti, claimed to be the owner of the entire parcel of land in dispute except lots Nos. 12 and 13, at the time she made her conveyance to the plaintiff and it appears that she first settled upon the land in question in 1888, erected buildings upon the premises, set out some fruit trees and used the balance of the land for pasture and claims that she enclosed the property with fences.

It appears that a man by the name of Lamar had previously fenced in the land and he instructed Mrs. Monti to go on the property, claim it, keep the fences up and after a while she would be the owner, and it is also claimed that the fence on the back of the property and at each end extended down to the lake, together with the lake entirely enclosed the property; that she occupied the premises as such until 1907 when she moved off and rented the same to the plaintiff until plaintiff

purchased same in 1922; and the plaintiff claims that it has occupied same since that time.

It is urged by the plaintiff that at the time of the filing of the plat in 1812, at which time the town of Grandon, now Fairport, was laid out, that there was no statutory dedication for the following reasons:

"First: The deed to Samuel Huntington granted him no authority to plat this property or to dedicate streets. That he had no power of attorney or other authority and acting as trustee had no powers except those expressly granted.

"Second: Title to land could be transferred only in writing, signed by the transferor. This plat and description was signed by no one.

"Third: There was no legal acknowledgment of the plat for the reason that the plat was unsigned and there was therefore no signature to acknowledge.

"Fourth: Prospect Street was not described as required by law.

"Fifth: The seal of the justice taking the acknowledgment was not affixed."

The description of the plat which was filed and recorded in 1812 is as follows:

"The public ground intended for streets, commons or other public uses and the lots intended for same in said town are set forth and described as follows, viz., Prospect Street, the south line of which begins five rods south of the top of the bank at a stake in the east line of said lot No. 1, which is also the east line of the town, from thence the line runs west 111 rods, thence south 60 degrees, west 34 rods to the intersection of the east line of High Street. The north side of Prospect Street being bounded by the top of the bank until it intersects the north line of Second Street."

It is claimed that Samuel Huntington as trustee had no authority to plat this property or to dedicate streets thereon. It is admitted in the brief of plaintiff that this deed refers to a previous instrument entered into between the interested parties, namely, Skinner, Huntington, Perkins, Calvin Austin and Seymour Austin, defining the terms of the trusteeship but that this does not set out its contents which are unknown.

In the light of this record and the fact that no action was taken by the other interested parties to nullify this act of the trustee, an inference may be properly

drawn that he acted by virtue of authority; and further, if the trustee had no authority to so act, then we are satisfied that his actions were ratified by the other interested parties and that such subsequent ratification was equal to a prior authorization, as the record discloses that subsequent to the dedication of Prospect Street by Huntington, deeds were executed in conformity with the plat and reference made thereto by these proprietors, which would be some evidence of proper authorization or ratification and a large amount of other evidence might be cited evidencing ratification. However we entertain no doubt but that Huntington was properly authorized to make this dedication, and if not properly authorized his acts were subsequently ratified by the principals. See **Brown v Manning, 6 Ohio.** The 3rd paragraph of the syllabi is as follows:

"Town plat made by agent, his numbering of lots, laying out of streets, etc., recognized by the proprietors and acted upon by them is sufficient proof of his authority."

We hold that this claimed lack of authority is not tenable. It is further claimed by the plaintiff that title to the land could be transferred only in writing and signed by the transferor. The instrument dedicating these streets is in writing and recorded. It is true Huntington did not sign this instrument in which the streets were dedicated for public use. Was such signature necessary? The statute in force at the time of the acknowledging and recording of the town plat of Grandon provided as follows, and is known as the Act of 1805, Ohio Laws, 213:

"Section 1. Be it enacted by the general assembly of the state of Ohio. That whenever any town shall hereafter be laid out within this state, the proprietor or proprietors of such town, shall cause a true and accurate map or plat thereof, to be recorded in the recorder's office of the county where the same lies, before any lot or lots therein be offered for sale; * * *

"Section 2. Be it further enacted, that such maps or plats as are required by this act to be recorded, shall particularly set forth and describe all the public ground within such town, by its boundaries, courses and extents, and whether it be intended for streets, alleys, commons or other public uses, and all the lots intended for sale by progressive numbers, and their precise

length and width; and the map so made and acknowledged, before a justice of the peace or associate judge of the Common Pleas Court, of the proper county where the town lies or before a judge of the Supreme Court, and certified under the hand and seal of the judge or justice taking such acknowledgment and recorded, shall be deemed a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended, to be for public uses in the county in which such town lies, in trust to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever."

It will be observed that this is a special statute dealing in its entirety with the laying out of towns, streets, alleys, commons, and provides that the map so made and acknowledged before a justice of the peace, certified under his hand and seal shall be sufficient to vest title in the county in trust too and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever. Compliance with this statute was all that was required in order to create a statutory dedication of Prospect Street. There is no provision therein that the proprietor or proprietors shall sign the plat or map. All that was required under the law was that the map thus made be ac- knowledged. We are satisfied that the signature of Huntington to this plat was unnecessary.

The statute dealing with the execution of deeds and mortgages is somewhat broader wherein provision is made that a deed, mortgage or lease of real property must be signed and acknowledged. No such requirement as to signature is found in the law dealing with plats at that time.

It is urged there was no legal acknowledgment of the plat for the reason that the plat was unsigned and there was therefore no signature to acknowledge. Inasmuch as we have held that it was unnecessary to sign this plat this contention becomes untenable. The statute provided that the map so made and acknowledged was sufficient.

It is further urged that Prospect Street was not described as required by law. An examination of the statute relating to dedication hereinbefore set out, discloses that the dedicator was required to: "particularly set forth and describe all the public ground within such town by its boundaries, courses

and extent and whether it be intended for streets, etc."

The south boundary and courses are given but it is claimed that such is not the case on the north wherein the street is bounded on the north as follows: "the north side of Prospect Street being bounded by the top of the bank until it intersects the north line of Second Street."

It is true that no courses are specifically designated by the use of surveyor's instruments. However, the boundary line is indicated as being bounded by the "top of the bank." This boundary line is indicated on the bank of the lake as it existed at that time and the exact lo- cation and extent is designated upon the recorded plat. We are satisfied that this was a sufficient compliance with the law as to description.

It is further claimed that there was no statutory dedication due to the fact that the seal of the Justice of the Peace was not affixed at the time of the acknowledgment and it does appear from the record that a seal was not so affixed. The statute provided that the acknowledgment shall be before a Justice of the Peace or associate judge of the Common Pleas Court, a judge of the Supreme Court, and certified under the hand and seal of the judge or justice taking such acknowledgment.

Sec 15087, GC, which appears to be a curative act provides:

"If the officer before whom was acknowledged a deed, mortgage, or other instrument of writing for the conveyance of land made and executed prior to January 2, 1833, failed to affix his seal to the acknowledgment such acknowledgment shall be good and valid in law and equity, anything in any law theretofore passed to the contrary, notwithstanding."

We believe that the failure of the justice to affix his seal to the acknowledgment is fully cured by this statute.

There is also another provision known as §12210 GC which provides:

"When in an instrument in writing or in a proceeding there is an omission, defect, or error by reason of the inadvertence of an officer or of a party, person or body corporate whereby it is not in strict conformity with the laws of this state, the court of this state may give full effect to such instrument or proceeding according to the true manifest intention of the parties thereto."

However, we deem it unnecessary to apply this section due to the above holding. It is the conclusion of this court ▮▮▮▮▮▮ that there was a proper statutory dedication of Prospect Street and that such dedication included the lands as described in the map of 1812 as Prospect Street and coming to this conclusion it becomes unnecessary for this court to determine whether or not there was a common law dedication.

It is urged by the plaintiff that there was no acceptance of Prospect Street by the village of Fairport in compliance with §3723, GC. The village of Fairport was incorporated in 1836. §3723, GC, was not in force and effect in 1836 when the village of Fairport was incorporated. However it is urged that the village was not organized until 1889, which is disputed by defendants. We hold that the status of the village was established in 1836 at the time of the incorporation and not by the election of officers at a later period; and that the status of the public grounds, streets, alleys, and highways were also fixed at the time of incorporation. If such is the fact that officers were not elected under the incorporation of the village until 1889, such would in no way change the status of the village or the rights vested therein at the time of incorporation. It is to be borne in mind that the organization which was effected in 1889 was under the incorporation of 1836. The act incorporating the village of Fairport provided:

"Section 6 of the act incorporating the village of Fairport granted to the village authority 'to prevent and remove all and any obstructions in the streets, highways or sidewalks within the town,' and further granted to the village the authority 'to establish the boundaries of all streets within the corporate limits, and to pave or grade the same'."

Municipalities legally incorporated by act of the Legislature do not lose title to their streets or public grounds or lose control thereof by failure to ▮▮▮▮▮▮ elect municipal officers; neither do such municipalities lose title to their streets after it has actually been organized, if it failed to elect officers for a period of years.

In the case of People v Calif. Fish Co., 138 Pacific 79: In this case the town of Wilmington was incorporated by act of the Legislature, §1 of which provided:

"That the tract described shall hereafter constitute the boundaries of and be known and named the town of Wilmington."

Section 2 provided:
"That the town shall be a body politic and vested the government in a Board of Trustees."

Section 3 provided:
"For the election of town officers."

And §4 provided:
"For the first election."

It was held:
"That the town of Wilmington was an incorporated town within the Constitution Article 15, paragraph 3 withholding from sale to private persons all tide lands within two miles of any incorporated town from the time the incorporating act passed until its repeal, though it was never accepted by the inhabitants by the election of officers or organization of a town government."

On page 93 of the opinion the court points out that the act incorporating the town of Wilmington did not show a legislative intent, that acceptance and organization were to be a condition precedent to the beginning of its status as a corporation; that the language used is positive and direct to the effect that the territory described shall hereafter be known as and constitute the town of Wilmington and that it shall be a body politic and corporate.

It will be observed that in §1 of the act incorporating the town of Fairport the Legislature after describing the territory provided:

"Be and the same is hereby created a town corporate by the name of Fairport."

As in the above cited case the act incorporating the town of Fairport contains no provision making the election of officers necessary to the legal corporate existence of the town.

In the case of Welch v Ste. Genevieve, Federal Case No. 17372, 1st Dill, 130 U. S., 1871, "a corporation created by the Legislature for the purpose of local municipal government cannot without a provision to that effect be dissolved by the mere failure to elect officers." The court in the course of its opinion say:

"Non-user or failure to elect officers for a series of years do not work a dissolution of the municipal corporation created by act of the Legislature."

In the case of Ogle v School Directors of District No. 173, 245 Ill. Appeals, 447, the court says:

"Municipal corporations failure to exercise functions for seven years will not terminate its existence. Existence of municipal corporations can be terminated only on legislative consent or in compliance with legislative provision."

And many other cases might be cited to the same effect which we deem unnecessary.

There is no claim by the plaintiff that in 1889 there was any new incorporation proceedings relative to the village of Fairport. The officers elected at that time were elected by virtue of the original incorporation in 1836.

It is conceded by counsel for plaintiff that no acceptance on the part of the county was necessary at the time of the statutory dedication in 1812 in order to vest title in the county provided there was a valid statutory dedication. So it is clear that title vested in the county without any formal acceptance when duly dedicated under the statute in 1812 so that whatever right or title vested in the county when Prospect Street was dedicated in 1812 vested by operation of law in the village of Fairport when incorporated in 1836. In the case of Sullivan et v Columbus, 12 Ohio Decisions, 653, the court say:

"By Robert Neal's statutory dedication of Forest Alley in 1853, that alley became a public highway of the county of Franklin. It required no acceptance on the part of the public to make it such highway except the condition of the statute with which he had complied and when this alley was taken into the city in 1862 Forest Alley became a highway of the city of Columbus and the fee thereof vested in the city by operation of law to make the dedication effective. It was not necessary that Forest Alley should have been unfenced or without any enclosure around it or traveled or improved by the public. Streets dedicated under the statute in many instances are not open for public use for many years after dedication."

Elliott on Roads and Streets, Fourth Edition, Vol. 1, paragraph 505 discussing control of municipalities over streets, says:

"In vesting the inhabitants of the locality with the government thereof is a change in the political or governmental subdivisions and the natural and reasonable intendment is that when a new governmental instrumentality is established it takes control of the territory and affairs over which it is given authority to the exclusion of other local governmental instrumentalities. It displaces the old and takes its place as its legal successor, and not as an auxiliary.

"In creating a town or city the Legislature must be deemed to do so with knowledge of the general principles which apply to such political subdivisions, and with the expectation that they shall exercise the usual jurisdiction of such subdivisions exclusively and not divide it with other public or quasi-public corporations. The object of incorporating a town or city is to vest the inhabitants of the locality with the government of all the matters that are of special municipal concern and certainly the streets are as much of special and local concern as anything connected with a town or city can well be. It ought therefore to be presumed that they pass under the exclusive control of the municipality as soon as it comes into existence under the law."

13 Ruling Case Law, par. 146, the author states:

"County authorities have no power to control city streets except where the statute so provides. Where such control is vested in the city authority, the power of the city over its streets is exclusive and the general power of the county within which the city lies, to control the highways within its territory is thereby divested insofar as such streets are concerned."

We therefore hold that no formal acceptance of Prospect Street by the village was necessary at or after its incorporation as a pre-requisite to the exercise of control over same, but by reason of incorporation control of Prospect Street vested in the village, and the village succeeded to the rights of the county secured by the dedication in 1812.

Assuming that §3723, GC, was in force and effect at the time of incorporation of the village in 1836 such would not preclude control over highways or public grounds included within the boundaries of the vil-

lage. As said in the case of **Bay v U. S. Fidelity & Guaranty Co., 24 Oh Ap 73, (5 Abs 814):**

"Sec 3723, GC, is not a limitation on general powers of a corporation to open and improve streets but is a restriction on power possessed by others of imposing burdens and responsibilities on corporations."

And also in the case of **Wabash R. R. v Defiance, 52 Oh St, 262:**
"A county road within a municipality is subject to its control."

Also in the case of **Herman v Spitzmiller, 24 Circuit Court, New Series, 22:**
"Sec 3723, GC, requiring acceptance of the dedication by ordinance is not to perfect the city's title but to protect it from liability for care."

However, as heretofore mentioned §3723, GC, was not the law in 1836 when the village was incorporated. Therefore the claim that there was no acceptance by the village under §3723 GC is not tenable.

It is the contention further, of plaintiff that by reason of the open, adverse, notorious, and continuous use of the land in question by the plaintiff and its predecessors in title, that the village is barred by the statute of limitations from claiming any interest therein. The question as to the statute of limitations operating as against municipalities has been the subject of prolific discussion and judicial application in this state, and many cases have been cited pro and con dealing with the subject of adverse possession as affecting municipalities. The earlier cases beginning with the case of **Cincinnati v Church, 8 Ohio 299** appear to have adhered to the doctrine that adverse possession does operate against a municipality to the same extent as against individuals and appears to make no distinction between property held in its governmental and proprietary capacity. Later cases however, have frowned somewhat upon this doctrine. In 1852 the legislature enacted what is now §13421, GC. This section provides:

"Whoever obstructs or encumbers by fences, buildings, structures or otherwise a public ground, highway, street, or alley of a municipal corporation shall be fined not more than $500."

This law was in full force and effect when Mrs. Monti and others went into the claimed possession of this dedicated street. Some of the cases cited by plaintiff were decided prior to this enactment. Others decided since its enactment made no reference to this statute.

However, in the case of **Heddleston v Hendricks, 52 Oh St page 460,** reference is made to this section. This was a case in which there was an encroachment upon the public highway by the erection of a stone wall and also by a hedge fence. The third paragraph of the syllabus is as follows:

"the right of an adjacent land-owner to enclose by a fence, however, constructed a portion of a public highway cannot be acquired by adverse possession however long continued."

And the court in its opinion made reference to the earlier cases, **City of Cincinnati v The First Presbyterian Church, 8 Ohio 299,** and the case of the **City of Cincinnati v Evans, 5 Oh St 594** and stated in its opinion that these cases are regarded as exceptional and further in the course of its opinion the court quoted from the case of **Railroad v Commissioners, 31 Oh St 338,** wherein Judge Boynton said:

"No principle is more firmly settled at common law than that no length of time can legalize a public nuisance."
"This principle has not been affirmed by any reported cases in this state, yet in all cases where an effort has been made to acquire title to a portion of a public highway by adverse possession and enjoyment outside of a municipal corporation such effort has failed."

It appears that in the case of Heddleston v Hendricks, supra, the Circuit Court found in favor of the party claiming title by adverse possession and the Supreme Court in the concluding paragraph of its opinion say:

"In view of the cases and what seems to be settled law on the subject it appears to us that the Circuit Court erred in its conclusions of law from the facts found that the land owner in this case had by adverse possession acquired the right to maintain his encroachment on the highway."

The court further say:
"The wall and hedge constitute an encroachment on the highway and therefore

a nuisance which would not ripen into a right however long continued."

In the case of **Sullivan et v Columbus, 12 Ohio Decisions, 651,** the fifth paragraph of the syllabus is as follows:
"No rightful permanent private possession of a street can be had. The maintenance of the fence or other obstruction in the highway is a nuisance punishable as a misdemeanor under §6921, Revised Statutes as enacted in 1857. Therefore where a fence has been maintained since 1858 the nuisance is continuous and existing, the act one for which those maintaining it are liable to indictment and the possession thereof, not adverse for the reason that the statute does not run in favor of a nuisance."

This opinion was rendered by the Franklin Common Pleas Court in 1902, and the court reviews a number of the earlier cases and makes reference to the case of Heddleston v Hendricks, supra, and in the course of its opinion the court referred to §6921 of the Revised Statutes which is now §13421, GC. And the court stated that more recent cases place the right of the public as against encroachment on its highway however long continued, on the ground that they are public nuisances in favor of which the statute of limitations does not run.

In the case of the **Village of Wyoming v Mary B. Walker, 27 Nisi Prius, New Series, page 564,** the first paragraph of the syllabi being as follows:

"The statute of limitations does not run against a municipality seeking to eject the occupant of a part of a public street who has held adversely for more than 21 years."

The court in the second paragraph of the syllabi however held that a municipality is subject to the principle of equitable estoppel however, just as an individual, and the defense that the village had previously indicated the true boundary of the street by curbing is not subject to demurrer.

In the case of **Joseph v City of Akron, 19 Oh Ap, 415,** the court in disposing of the matter before it used the following language:

"In Ohio as in most states the statute of limitations as such does not run against municipalities as to their title and rights in streets which they hold in trust for the public. Such rights are not extinguished by mere non-use or adverse possession due to laches or non-action of municipal authorities. But Ohio in common with many other states recognized the doctrine that there are exceptional cases where there has been such conduct on the part of the public authorities relied and acted upon by an adjacent owner as will estop the public from retaking possession of the portion of the street occupied by such adjacent owner."

It will be observed that in laying down the principle of equitable estoppel the court based its holding on some affirmative act of the municipality which misled the one claiming adverse possession to his detriment and where the one claiming adverse title acted in good faith.

In the case of **Gallipolis v The Gallia Co. Fair Co., 34 Oh Ap 116, (7 Abs 509),** the first paragraph of the syllabi is as follows:

"An encroachment by buildings on a highway for more than 21 years will not ripen into a right of adverse possession against the city when the highway has been a street of such city less than 21 years."

The court discusses the question of the operation of statutes of limitations in favor of individuals as against a municipal corporation relative to its streets.

"The first question arises upon the plaintiff's demurrer to the second defense of the answer. Does the fact that the defendant and its predecessors in title have occupied a part of the roadway for more than 21 years by inclosing the same and erecting buildings thereon vest them with such title as to bar the plaintiff from now asserting a right of possession to the street? The question of just how far the public is barred by limiting statutes from asserting its legal rights to public places has not been entirely clear. Some of the earlier cases that applied the statutes of limitations against municipal corporations, for instance, have been in later years criticized by the Supreme Court and other courts to the extent that their authority is seriously impaired. 1 **Ohio Jurisprudence**, §536 et seq. In this case, however, the possession against the city would have to be tacked to the possession against the township trustees and county commissioners to accomplish the 21-year period, and, however the rule may be as to municipal corporations, we are unaware of any controlling authority later than **Oxford Township**

v **Columbia, 38 Oh St 87** that holds that quasi corporations such as Boards of Township Trustees and Boards of County Commissioners are subject to statutes of limitations in asserting rights to property for which they are trustees and the Oxford Township case at least so far as the case at bar is concerned is avoided by the subsequent case of **Heddleston v Hendricks, 52 Oh St 460.** We say that the Oxford Township case is avoided by the Heddleston case rather than overruled because the latter case develops a particular reason why statutes of limitations do not run against encroachment on highways and that reason is that such encroachments constitute a statutory nuisance by virtue of what is now §13421, GC. It is argued that the Heddleston case should be limited by the facts thereof and that the letter of that case only determines that the public is not barred by an encroaching fence. The underlying principle, however, is broad enough to cover the facts of the case at bar. If an encroaching fence cannot ripen into a right because the statute denounces the fence as a nuisance, surely an encroaching building similarly denounced by the same statute is likewise a nuisance and as such never ripens into a right. The second defense is not good. The demurrer to it is sustained."

To the same effect see Elliott on Streets and Roads, 4th Edition, paragraphs 1187, 1188, 842.

In the case of **Morehouse v Burgot, 12 Ohio Circuit Decisions, 163,** the second paragraph of the syllabi is as follows:

"The statute of limitations does not allow a party to do wrong and acquire rights thereby, hence where an owner of land adjoining a highway undertakes to get possession thereof by trespass no statute of limitations runs in his favor."

In the case of **Wright v Oberlin, 13 O. Circuit Court 509,** the fourth paragraph of the syllabi is as follows:
"A city in exercising its jurisdiction over its streets performs a public duty placed upon it by act of the state and not in its private right or by reason of its private existence. Hence the statute of limitations does not run against the rights of a city in its streets."

This is an interesting case and in the course of its opinion the court say:
"A municipal corporation has two ex-

istences, one, its individual rights and another its public rights. In its private rights and obligations it has been held that the statute of limitations will run against it but in its public rights wherein it represents the state it is held that the statute of limitations does not run against a city any more than it would against a county or against a state. Insofar as the city exercises its dominion and jurisdiction over the streets of the city, it is one of its public duties. It is a duty that is placed upon it as the act of the state and not in its private right or by reason of its private existence. That being true as to its streets it stands in precisely the same situation that the county does to the highway."

In the case of **Cleveland & P. R. R. et v Cleveland et, 33 Circuit Court Reports, 482,** the seventh paragraph of the syllabi being as follows:
"The placing by railroad companies upon city streets of permanent structures that prevent public use of all or part of such street being unauthorized by statute, constitutes the maintenance of public nuisances in favor of which the statute of limitations does not run, especially of such structures when so placed where claimed by such railroads, however mistakenly, to be subservient to the public use to which the premises had been dedicated as a street and pursuant to a lawful agreement with such city to that end."

The court in the course of its opinion used the following language:
"If the city were asserting a merely proprietary title its action would scarcely lie after this lapse of time but its title to its streets is held as already noted in trust for the public whose sovereign right no prescription nor laches can abridge. We are not unaware of the earlier decisions in this state affirming the application of the statute of limitations to somewhat similar cases but the authority of those decisions is questioned in **Heddleston v Hendricks, 52 Oh St 460,** where Mintall, Judge, says at page 467: 'more recent cases place the right of the public as against encroachments on its highway, however long continued on the ground that they are public nuisances in favor of which the statute of limitations does not run.' Those earlier cases are moreover contrary to the well defined current of American authority and this court has long since determined that their application must be restricted to the particular facts upon which they are found-

ed until they shall be as they ought to be overruled. So the loss by mere abandonment, mere non-use of the common right of highway rests finally on no other, no better footing than loss by prescription and is therefore equally illusory, nor does the doctrine of equitable estoppel when invoked to accomplish the same result occupy any former foundation. If as already shown the Legislature cannot unless in the exercise of eminent domain authorize property to be diverted from the public use to which it was originally dedicated, it is of course beyond the reach of any subordinate agency of government so to do and that which is thus incapable of direct accomplishment must be equally unattainable by indirection. So where there is an entire absence of power to make a grant originally, there can be no room for an estoppel to grow up afterwards, it being once established the premises in controversy were originally dedicated to the public for street purposes no grant nor prescription nor mere non-use nor equitable estoppel can change its status."

Also in case of **Fleming et v Steubenville et,** our own Court of Appeals, Seventh District, Judge Roberts writing the opinion, **44 Oh Ap 121, (14 Abs 51),** wherein the court say:

"Abutting owners have not acquired a title or right to continue possession of unimproved portion of road by adverse possession. The rule of equitable estoppel does not apply in and of the abutting owners."

The above cited cases indicate the later trend of judicial decisions in this state.

Does the municipality in the exercise of its ownership and control over its streets act in its proprietary or governmental capacity? It has been recently held in this state that streets and highways are public and governmental institutions maintained for the free use of all citizens of the state and a municipality while engaged in the improvement of streets is engaged in the performance of a governmental function. See the case of **City of Wooster v Arbenz, 116 Oh St 281, 12 O. Decisions, 650; 13 Ohio Circuit Court, 509.**

McQuillan on Municipal Corporations, Second Edition, Vol. 4, §1400, Elliott on Streets and Roads, 4th Edition, Vol. 1, paragraphs 496, 511, **76 Oh St 477,** and other cases might be cited to the same effect.

We hold that in the ownership, control and supervision of its streets, municipalities act in their governmental and not in their proprietary capacities.

It is also urged that inasmuch as permanent buildings had been erected thereon the municipal authorities are estopped to now claim right, title, or control over Prospect Street. True, buildings were erected thereon a number of years ago by the plaintiff's predecessor. However, none of these buildings are now located thereon, the house having burned down some years ago. These structures that were erected thereon only occupied a small portion of the width of the street as laid out and dedicated in 1812. However, in the light of §13421, GC, which makes it a criminal offense to obstruct by fences or buildings, or structures or otherwise a public ground, highway, street or alley, of a municipal corporation thereby creating a nuisance upon the street we are unable to logically conclude how as a matter of equity one can violate this statute and acquire rights thereunder, under the principle of equitable estoppel. If no legal rights could be obtained through a violation of this section we are unable to perceive how an equitable right could accrue in the face of a violation of same. To this effect see Elliott on Streets and Roads, 4th Edition, Vol. 2, paragraph 1189, under the subject "equitable estoppel," wherein the author says:

"It has been held that non user is evidence of abandonment and many of the courts influenced perhaps by the hardships that would result from the contrary holding in the particular cases under consideration have applied the doctrine of equitable estoppel where the claimant has made expensive improvements and has apparently acquired rights of such a nature and under such circumstances that to deprive him of them seemed highly inequitable and unjust. We doubt however, if the doctrine of most of these cases can be sustained upon principle, at least, where the city or the local authorities have done no affirmative act to mislead the claimant. It is difficult to conceive upon what principle an equitable estoppel can be securely placed in such cases for the person who encroaches upon a public way must know as a matter of law that the way belongs to the public and that the local authorities can neither directly nor indirectly divert it to a private use, as the person who uses the highway must possess this knowledge and

in legal contemplation does possess this knowledge and in legal contemplation does possess it. One of the chief elements of an estoppel is absent, and estoppel cannot exist where the knowledge of both parties is equal, and nothing is done by the one to mislead the other. In addition to this consideration, may be noted another influential one, already suggested in a different connection and that is the private use of the public. What was wrong in the beginning was wrong each day of its continuance, and it is a strange perversion of principle to declare that one who bases his claim on an original and continued wrong may successfully appeal to equity to sanction and establish such claim.

"It is at all events a great stretch of the doctrine of estoppel and a wide departure from the rule laid down by the earlier decisions and confirmed by many of the modern authorities. And even in states in which the general doctrine of equitable estoppel is recognized and applied in particular cases it is generally held that mere encroachment on a highway by fence or the like especially if not of such a character as to charge the municipality with notice will not estop the public from asserting its right to the land actually belonging to the highway. The mere fact that there is such an encroachment or possession or that the public official saw or might have seen some improvement in the course of construction where the municipality has done nothing to induce it or mislead it is usual and we think correctly held insufficient. It may be however, that where there has been an abandonment or there have been misleading acts or other peculiar circumstances as in some of the cases cited in the first two notes to this section, and improvements have been made and rights acquired on the faith thereof such a case may be made as will justify the application of the doctrine of estoppel. Such appears to be the general rule sustained by the weight of authority where the making of valuable improvement in the highway has been induced by the act of the municipality."

In the case at bar there is no claim of inducement by the village to erect these buildings upon Prospect Street. In fact, the record discloses that the predecessor was from the beginning a trespasser only. In the light of §13421, GC, which was in full force and effect at the time the claimed predecessor in title of the street in question went into possession, we are unable to understand how she could acquire any rights therein, her construction and erection of these buildings and fences being in direct violation of this criminal statute. It might be urged that inasmuch as this street remained unopened, which is disputed, that such was not a street in contemplation of §13421 GC. However, it is to be borne in mind that we have determined in this opinion that the dedication of this street in 1812 was in compliance with the statute and therefore a statutory dedication. No acceptance was necessary on the part of the county or the public at that time to make it a public street. It therefore became such and has so remained through the years. Therefore we believe it comes squarely within the inhibitions of §13421 GC.

We therefore hold that the plaintiff and its predecessors in title could not attain such title by adverse possession of Prospect Street, neither could they attain such right by virtue of the doctrine of equitable estoppel and we further hold that the municipality in the ownership, supervision and control of its streets, acts not in its proprietary but in its governmental capacity.

Coming to these conclusions we find in favor of the cross-petitioner, the village of Fairport, and that it is entitled to the relief sought; that the petition of plaintiff be dismissed at its costs.

Decree accordingly.

ROBERTS and NICHOLS, JJ, concur.